LATHAM & WATKINS LLP
  Kevin C. Wheeler (Bar No. 261177)
*kevin.wheeler@lw.com*
140 Scott Drive
Menlo Park, CA 94025
T: (650) 328-4600 | F: (650) 463-2600

  Gregory K. Sobolski (Bar No. 267428)
*gregory.sobolski@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
T: (415) 395-8035 | F: (415) 395-8095

Attorneys for Defendants Shenzhen Senior Technology
Material Co. Ltd. (US) Research Institute, and
Shenzhen Senior Technology Material Co. Ltd.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CELGARD, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SHENZHEN SENIOR TECHNOLOGY<br>MATERIAL CO. LTD. (US) RESEARCH<br>INSTITUTE, AND SHENZHEN SENIOR<br>TECHNOLOGY MATERIAL CO. LTD.,<br><br>　　　　　Defendants. | CASE NO. 4:19-cv-5784-JST<br><br>**DEFENDANTS' OPPOSITION TO CELGARD'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Date: January 27, 2020<br>Time: 2:00 pm<br>Place: Courtroom 6<br>Judge: Judge Jon S. Tigar<br><br>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

    A.   Senior Is An Innovator In The Separator Industry.................................... 2

    B.   Senior Has Never Sought To Access Celgard's Alleged Trade
        Secrets Or Confidential Information.......................................................... 3

    C.   Celgard Learned Dr. Zhang Joined Senior Over A Year Before Its
        Complaint.................................................................................................. 3

III.  LEGAL STANDARD ........................................................................................... 4

IV.  CELGARD HAS NOT SHOWN LIKELIHOOD OF SUCCESS ON THE
    MERITS ................................................................................................................ 4

    A.   Celgard Has Not Shown Likelihood Of Success On Its Trade
        Secret Claims ............................................................................................ 4

        1.   Celgard's Identification of Trade Secrets Is Inadequate.............. 5

        2.   Celgard Fails To Show Improper Acquisition, Disclosure
            Or Use Of Its Alleged Trade Secrets ........................................... 6

    B.   Celgard's Remaining State Law Claims Are Preempted....................... 9

    C.   Celgard Has Not Shown Likelihood Of Success On Its Patent
        Claims ..................................................................................................... 10

        1.   Celgard Is Not Likely To Succeed On Claim 12 Of The
            RE520 Patent ............................................................................. 10

            a.   No Direct Infringement.................................................... 10

            b.   No Indirect Infringement ................................................. 14

            c.   Claim 12 Is Invalid.......................................................... 15

        2.   Celgard Is Not Likely To Succeed On Claim 17 Of The
            '867 Patent ................................................................................. 15

            a.   Claim 17 Is Invalid.......................................................... 15

            b.   Celgard Did Not Argue That The Preamble Is
               Limiting............................................................................ 16

V.   CELGARD CANNOT SHOW IRREPARABLE HARM WITHOUT AN
    INJUNCTION...................................................................................................... 17

    A.   Celgard Cannot Establish Substantial And Immediate Harm............................. 17

    B.   Celgard Fails To Establish The Inadequacy Of Monetary Damages.................. 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

i

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

      C.      Celgard Fails To Established A Causal Nexus ...................................................... 21

VI.    THE BALANCE OF HARDSHIPS WEIGHS AGAINST AN INJUNCTION .................................................................................................................. 22

VII.   THE PUBLIC INTEREST DOES NOT FAVOR AN INJUNCTION ........................... 22

VIII.  CELGARD'S REQUESTED PRELIMINARY INJUNCTION IS OVERBROAD ................................................................................................................. 23

IX.    CONCLUSION ............................................................................................................... 24

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

ii

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

## TABLE OF AUTHORITIES*

### CASES

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) ...................................................................... 4

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012).............................................................................. 20

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001)................................................................................ 4

*Amgen Inc. v. Coherus BioSciences Inc.*,
   931 F.3d 1154 (Fed. Cir. 2019) ............................................................................. 11

*Amgen Inc. v. Sandoz Inc.*,
   923 F.3d 1023 (Fed. Cir.), *reh'g granted, op. modified*,
   776 F. App'x 707 (Fed. Cir. 2019) ........................................................................ 11

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014),
   *overruled on other grounds by* 792 F.3d 1339 (Fed. Cir. 2015)............................ 13

*Apple Inc. v. Samsung Elec. Co.*,
   695 F.3d 1370 (Fed. Cir. 2012)...................................................................... 17, 21

*Aqua-Lung Am., Inc. v. Am. Underwater Prods., Inc.*,
   709 F. Supp. 2d 773 (N.D. Cal. 2010) .................................................................... 7

*Automated Merch. Sys., Inc. v. Crane Co.*,
   357 F. App'x 297 (Fed. Cir. 2009) ................................................................. 18, 20

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
   No. C 08-3931 RS, 2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ............................. 10

*Celgard, LLC v. LG Chem, Ltd.*,
   624 F. App'x 748 (Fed. Cir. 2015)................................................................. 20, 22

*Celsis In Vitro, Inc. v. CellzDirect, Inc.*,
   664 F.3d 922 (Fed. Cir. 2012)............................................................................... 19

*Choon's Design, LLC v. IdeaVillage Prod. Corp.*,
   776 F. App'x 691 (Fed. Cir. 2019) ....................................................................... 12

*Citcon USA, LLC v. RiverPay Inc.*,
   No. 18-cv-02585-NC, 2019 WL 2603219 (N.D. Cal. June 25, 2019)............................ 6, 23

*Commil USA, LLC v. Cisco Sys.*,
   135 S. Ct. 1920 (2015)........................................................................................... 14

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

iii

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

*Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361 (Fed. Cir. 2013),
    *vacated in irrelevant part by* 135 S. Ct. 1920 (2015) .......................................................... 14

*Cordis Corp. v. Bos. Sci. Corp.*,
    99 F. App'x 928 (Fed. Cir. 2004) ....................................................................................... 22

*Diodes, Inc. v. Franzen*,
    260 Cal. App. 2d 244 (1968) .............................................................................................. 23

*DLMC, Inc. v. Flores*,
    No. CV 18-00352, 2018 WL 6682986 (D. Haw. Decl. 19, 2018) ...................................... 17

*E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*,
    No. 1:17-cv-00808, 2018 WL 3062160  (E.D. Cal. June 19, 2018) ...................................... 5

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ............................................................................................................. 17

*Edwards Lifesciences LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009) ........................................................................................... 16

*Eros Tours & Travel, Inc. v. Infinitywaves, LLC*,
    No. CV 14-5095, 2015 WL 11457691 (C.D. Cal. Feb. 9, 2015) ......................................... 17

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
    No. 2:13-CV-00784, 2013 WL 3872950 (E.D. Cal. July 25, 2013) .................................... 10

*Finjan, Inc. v. Blue Coat Sys., LLC*,
    No. 15-cv-03295-BLF, 2016 WL 6873541 (N.D. Cal. Nov. 22, 2016) ............................... 18

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
    No. 08-cv-1992, 2009 WL 3326631 (S.D. Cal. Sept. 3, 2009).......................................2, 10

*Henry Schein, Inc. v. Cook*,
    191 F. Supp. 3d 1072 (N.D. Cal. 2016) ................................................................................ 9

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995)........................................................................................17, 20

*Hubner v. Mayer*,
    No. CV-15-02965-MWF,
    2015 U.S. Dist. LEXIS 193902 (C.D. Cal. June 8, 2015) .................................................. 23

*Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*,
    No. CV 15-819, 2016 WL 4770244 (D. Del. Aug. 12, 2016) ............................................. 19

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)........................................................................................... 16

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

iv

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

*Jobscience, Inc. v. CVPartners, Inc.*,
 No. C 13-04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ................................... 5

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
 171 Cal. App. 4th 939 (2009) ....................................................................................... 10

*Lamont v. Krane*,
 No. 5:18-cv-04327-EJD, 2019 WL 2010705 (N.D. Cal. May 7, 2019) ............................ 5, 6

*Les Concierges, Inc. v. Robeson*,
 No. C-09-1510MMC,
 2009 U.S. Dist. LEXIS 39414 (N.D. Cal. Apr. 27, 2009) ....................................................... 7

*Lilith Games (Shanghai) Co. v. UCool, Inc.*,
 No. 15-cv-01267-SC, 2015 WL 5591612 (N.D. Cal. Sept. 23, 2015) ................................. 17

*Mattel, Inc. v. MGM Entm't, Inc.*,
 782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................................................... 9

*Microsoft Corp. v. AT&T Corp.*,
 550 U.S. 437 (2007) ....................................................................................................... 21

*Multilayer Stretch Cling Film Holdings v. Berry Plastics Corp.*,
 831 F.3d 1350 (Fed. Cir. 2016) ........................................................................................ 12

*Mylan Institutional LLC v. Aurobindo Pharma Ltd.*,
 857 F.3d 858 (Fed. Cir. 2017) .............................................................................. 2, 11, 12

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
 886 F.3d 803 (9th Cir. 2018) ........................................................................................... 21

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
 572 U.S. 898 (2014) ....................................................................................................... 14

*Nichia Corp. v. Everlight Am., Inc.*,
 855 F.3d 1328 (Fed. Cir. 2017) ........................................................................................ 21

*Ojmar US, LLC v. Sec. People, Inc.*,
 No. 16-cv-04948-HSG, 2017 WL 2903143 (N.D. Cal. July 7, 2017) ................................. 17

*Pellerin v. Honeywell Int'l, Inc.*,
 877 F. Supp. 2d 983 (S.D. Cal. 2012) ................................................................................ 7

*Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*,
 No. 3:12-CV-0911, 2014 WL 67509 (S.D. Cal. Jan. 8, 2014) ........................................... 19

*Perlan Therapeutics, Inc. v. Superior Court*,
 178 Cal. App. 4th 1333 (2009) ......................................................................................... 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

v

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

*Pharm. Research & Mfrs. of Am. v. Walsh*,
   538 U.S. 644 (2003).................................................................................4

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*,
   491 F.3d 1342 (Fed. Cir. 2007)...........................................................15

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)...........................................................13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2011)...........................................................19

*Schoell v. Regal Marine Indus., Inc.*,
   247 F.3d 1202 (Fed. Cir. 2001)...........................................................11

*Smith Int'l, Inc. v. Hughes Tool Co.*,
   718 F.2d 1573 (Fed. Cir. 1983)...........................................................19

*Standard Havens Prod., Inc. v. Gencor Indus., Inc.*,
   953 F.2d 1360 (Fed. Cir. 1991)...........................................................14

*Swarmify, Inc. v. Cloudflare, Inc.*,
   No. C 17-06957, 2018 WL 1142204 (N.D. Cal. Mar. 2, 2018)...............5

*Synopsys, Inc. v. ATopTech, Inc.*,
   No. C 13-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)........5

*T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*,
   821 F.2d 646 (Fed. Cir. 1987).............................................................20

*Wavetronix LLC v. Iteris, Inc.*,
   No. A-14-CA-970, 2015 WL 300726 (W.D. Tex. Jan. 22, 2015).........19

*Waymo LLC v. Uber Techs., Inc.*,
   No. C 17-00939-WHA,
   2017 U.S. Dist. LEXIS 73843 (N.D. Cal. May 11, 2017).....................9

*Western Directories, Inc. v. Golden Guide Directories, Inc.*,
   No. C 09-1625, 2009 WL 1625945 (N.D. Cal. June 8, 2009)...............24

*WesternGeco LLC v. ION Geophysical Corp.*,
   889 F.3d 1308 (Fed. Cir. 2018)...........................................................15

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002).........................................................1, 7

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..................................................................................4

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

vi

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

*Ziptronix, Inc. v. Omnivision Techs., Inc.*,
   71 F. Supp. 3d 1090 (N.D. Cal. 2014) ................................................................... 24

**STATUTES**

18 U.S.C. § 1836 ......................................................................................................... 4, 17

18 U.S.C. § 1839(5) .......................................................................................................... 6

18 U.S.C. § 1839(6) ...................................................................................................... 6, 7

35 U.S.C. § 271(a) .......................................................................................................... 24

Cal. Civ. Code § 3426.1(a) ............................................................................................... 7

Cal. Civ. Code § 3426.1(b) ............................................................................................... 6

Cal. Civ. Code § 3426.2(a) ............................................................................................. 17

*Emphasis added unless otherwise indicated, throughout.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

vii

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

## I.   INTRODUCTION

Plaintiff Celgard, LLC ("Celgard") falls far short of meeting its burden for the drastic and extraordinary relief of a sweeping preliminarily injunction barring Defendants Shenzhen Senior Technology Material Co. Ltd. ("Senior") and Shenzhen Senior Technology Material Co. Ltd. (US) Research Institute ("Senior-US") (collectively "Defendants") from supplying key separator components to some of the world's largest lithium-ion battery manufacturers.  A request for the extreme relief Celgard requests requires a commensurate degree of urgency.  None exists here. Celgard has been sitting on the information that underpins its allegations since at least May 2018 (and in some instances years earlier).  That delay alone is dispositive.  Moreover, as the Federal Circuit held in Celgard's prior attempt to claim irreparable harm against another competitor, Celgard's history of licensing its intellectual property confirms the alleged harms are compensable with money damages and precludes a finding of irreparable harm.

Celgard's claims of likely success on the merits fare no better.  Senior has been a pioneer in the battery separator industry since its founding in 2003.  Senior's success is the result of its multi-million dollar investment in research and development, the skill of its nearly 400 scientists, and its collaboration with some of China's top universities and academics.  Ignoring this history, Celgard claims Senior's success is instead attributable to misappropriated Celgard trade secrets and infringed Celgard patents.  Not so.

First, Celgard's trade secret claims center on Dr. Zhang, a former Celgard employee. However, Dr. Zhang has not disclosed or used any Celgard trade secrets since his departure.  Celgard cites no contrary evidence, and instead attempts to draw an inference of misappropriation based on Dr. Zhang's prior access to Celgard's trade secrets while he was employed there.  This is legally impermissible.  *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1463 (2002) ("[T]he inevitable disclosure doctrine cannot be used as a substitute for proving actual or threatened misappropriation of trade secrets.").  Moreover, the product Celgard contends Senior "optimized" using Celgard's trade secrets has not changed since ███—two years before Dr. Zhang arrived at Senior.

Second, Celgard's other state law claims fail because they are wholly derivative of its flawed trade secret claims and, in any event, preempted because the "gravamen of the wrongful conduct"

1    for those state law claims is the same as the CUTSA misappropriation claim. *Gabriel Techs. Corp.*

2    *v. Qualcomm Inc.*, No. 08-cv-1992, 2009 WL 3326631, at *12 (S.D. Cal. Sept. 3, 2009).

3        Third, Celgard seeks a sweeping preliminary injunction against twenty-two Senior products,

4    yet it analyzed only two. And that limited infringement analysis does not withstand scrutiny. With

5    respect to the RE520 patent, Celgard concedes that Senior's products do not infringe literally and

6    relies instead on the doctrine of equivalents ("DOE"), a doctrine that requires "highly factual

7    inquir[ies] [that] rarely come[] clear on a premature record,'" particularly in the preliminary

8    injunction context. *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866 (Fed.

9    Cir. 2017). But even on this premature record, it is clear that Celgard's DOE theory is barred as a

10   matter of law because Celgard surrendered the allegedly equivalent subject matter during

11   prosecution of the patent. Celgard's claims with respect to the '867 patent fare no better. Celgard

12   is purposely ambiguous on its position of whether the preamble of the asserted claim is limiting, but

13   its infringement claim fails either way. First, the asserted claim is facially invalid because (among

14   other reasons) Celgard admittedly sold prior art products that anticipate the preamble and all other

15   limitations of the asserted claim. Second, Celgard has offered no meaningful evidence or analysis

16   showing the accused Senior products include the preamble limitation. Nor can it because, as

17   Senior's expert declarant Dr. Abraham details, they do not.

18       For all these reasons, Celgard's motion seeking to crush Senior's business and collaterally

19   damage some of the world's largest lithium-ion battery manufacturers (not to mention the consumer

20   electronics and electric vehicle companies that incorporate those batteries) should be denied.

21   **II.    FACTUAL BACKGROUND**

22       **A.    Senior Is An Innovator In The Separator Industry**

23       Senior has been developing its patent-protected separator technology since its founding in

24   2003. Gao Decl. ¶ 5-10.[1] By 2008, Senior launched the first dry process production line in China.

25   *Id.* For its achievements, Senior received Forbes China's "Best Up-and-Comer" award. *Id.* Senior

26   has over 1,700 employees, ███████████████████████████████████

27   ███████████████████████████████████████████. *Id.* ¶ 4.

28   ───────────────────────────
     [1] A certified English translation was filed with each of the Chinese language declarations.

1   In order to launch its first successful product line in 2008, Senior ████████

2   ████████████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████   Gao Decl. ¶ 48-

9   55, 63.  All of these activities occurred before Dr. Zhang joined Senior.  *Id.*

10   **B.   Senior Has Never Sought To Access Celgard's Alleged Trade Secrets Or**
11   **Confidential Information**

12   Dr. Zhang joined Senior as its Chief Technology Officer in 2017.  Dr. Zhang previously spent

13   about 12 years at Celgard.  Zhang Decl. ¶ 3.  In 2015, following Celgard's merger with Asahi-Kasei,

14   Dr. Zhang felt the corporate culture changed for the worse.  *Id.* ¶ 5.  For example, there was less

15   transparency and engagement between the Japanese management and the U.S. team.  *Id.*  Around

16   that time, Dr. Zhang's wife became ill and they considered moving to China for her care.  *Id.*  That

17   led Dr. Zhang to accept a job offer from Senior.  *Id.*

18   Senior hired Dr. Zhang because of his technical rigor and experience.  Gao Decl. ¶ 29-40.

19   Senior has never asked Dr. Zhang to discuss any of Celgard's alleged trade secrets or confidential

20   information.  Zhang Decl. ¶ 6-9;  Gao Decl. ¶ 39-40.  Dr. Zhang has not disclosed or used such

21   information since he left Celgard.  Zhang Decl. ¶ 6-9; Gao Decl. ¶ 39-40.

22   **C.   Celgard Learned Dr. Zhang Joined Senior Over A Year Before Its Complaint**

23   In May 2018 (fifteen months before filing suit), Celgard's CEO, Lie Shi, visited Senior's booth

24   at a trade show in China and asked to meet with Dr. Zhang.  Gao Decl. ¶ 42.  In February 2019,

25   Celgard sent Senior a letter confirming that it knew of Dr. Zhang's employment at Senior.  Wensley

26   Decl., Ex. 3.  Despite asserting that there are now "urgent" and "emergency" circumstances, Celgard

27   waited seven more months before filing suit and another month and a half to file its emergency

28   motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

3

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

## III.  LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. A plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20.

## IV.  CELGARD HAS NOT SHOWN LIKELIHOOD OF SUCCESS ON THE MERITS

Celgard "b[ears] the burden of establishing, by a clear showing, a probability of success on the merits." *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 662 (2003). If Celgard "cannot prove" that Defendants' defenses "'lack[] substantial merit,' the preliminary injunction should not issue." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

As a threshold matter, Senior-US has no relevance to Celgard's allegations[2] and Celgard cannot establish personal jurisdiction over Senior. As detailed in its Motion to Dismiss for Lack of Personal Jurisdiction, Senior is a Chinese company with no U.S. contacts relevant to Celgard's allegations in this case. But even if Celgard could establish personal jurisdiction (it cannot), Celgard cannot meet its burden for a preliminary injunction.

### A.  Celgard Has Not Shown Likelihood Of Success On Its Trade Secret Claims

Celgard  must demonstrate a likelihood of success on its claims under the California Uniform Trade Secrets Act ("CUTSA") and the federal Defend Trade Secrets Act ("DTSA") by showing: (1) the existence of a trade secret and (2) misappropriation of the trade secret. *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003); *see also* 18 U.S.C. § 1836. Celgard cannot make the necessary showing on either element.

---

[2] Although Senior-US is not challenging personal jurisdiction, it has never made, used, sold, offered for sale, or imported any separator; never engaged in business activities related to separators; never employed or had any business contact with Dr. Zhang; and never collected revenue. Xiao Decl. ¶¶ 17-37. As a result, Celgard is unlikely to succeed on any claim against Senior-US because it has committed no acts that constitute trade secret misappropriation, unfair competition, intentional interference with contract, induced breach of contract, or patent infringement.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

4

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1.   **Celgard's Identification of Trade Secrets Is Inadequate**

"[T]o obtain a preliminary injunction, a plaintiff must first identify his alleged trade secrets with 'reasonable particularity.'" *Lamont v. Krane*, No. 5:18-cv-04327-EJD, 2019 WL 2010705, at *2 (N.D. Cal. May 7, 2019). Celgard's identification falls way short. It broadly but vaguely asserts that its trade secrets comprise ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

Br. at 6-7. In other words, Celgard's trade secret claim improperly "incorporate[s] everything about [Celgard's] business practices." *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014); *see also Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1350 (2009). As a matter of law, Celgard's identification is not particular enough.

Celgard attempts to remedy this deficiency by providing certain "examples" of its alleged trade secrets in its separate identification of trade secrets. Dkt. 42-06 at 5 ("Statement Regarding Trade Secrets"). That is also deficient as a matter of law. In that identification, Celgard asserts that the described matters or documents are "examples," a "non-exhaustive" list, *id.* at 7, and "representative" of Celgard's trade secrets, *id.* at 9. Courts routinely reject such identifications because "[s]uch catch-all language serves as a tactical advantage to allow Plaintiffs expansion of alleged trade secrets at a later time, which the Court does not permit." *E. & J. Gallo Winery v. Instituut Voor Landbouw-En Visserijonderzoek*, No. 1:17-cv-00808, 2018 WL 3062160, at *4-5 (E.D. Cal. June 19, 2018). Celgard's trade secret identification also improperly lists ***over five hundred documents***—without attaching a single one or describing the alleged trade secrets they disclose, thus preventing Defendants from responding. *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-02965 SC, 2013 WL 5770542, at *5 (N.D. Cal. Oct. 24, 2013) ("[V]ague references to an enormous array of potential sources" are insufficient.).

Celgard's "attempts to set up its purported trade secrets as elusive moving targets do not bode well for the merits of its claims." *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957, 2018 WL 1142204, at *3 (N.D. Cal. Mar. 2, 2018) (denying a preliminary injunction). Celgard's "use of

expansive language [in identifying trade secrets] prevents the Court and the defendants from understanding what [Celgard] alleges was misappropriated." *Citcon USA, LLC v. RiverPay Inc.*, No. 18-cv-02585-NC, 2019 WL 2603219, at *2 (N.D. Cal. June 25, 2019). That is dispositive for Celgard's trade secret claims, particularly in the context of a preliminary injunction motion. *Id.*

### 2. Celgard Fails To Show Improper Acquisition, Disclosure Or Use Of Its Alleged Trade Secrets

Celgard must also establish misappropriation—"[d]isclosure or use of a trade secret of another without express or implied consent" or "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1839(5); 18 U.S.C. § 1839(6). Such elements should be established with "admissible evidence of misappropriation." *Citcon USA*, 2019 WL 2603219, at *1. Celgard fails to make this showing as well.

Celgard has no evidence that Defendants disclosed, used, or acquired (improperly or otherwise) any alleged Celgard trade secrets or confidential information. Rather, the declarations of Dr. Zhang and Mr. Gao, Senior's Chief Engineer, show the opposite. Dr. Zhang did not disclose any Celgard trade secrets or confidential information to anyone after leaving Celgard. Gao Decl. ¶ 3-40; Zhang Decl. 6-9. He has not, and will not, use any Celgard trade secrets or confidential information in his role as Senior's CTO. Gao Decl. ¶ 3-40; Zhang Decl. 6-9. Moreover, Senior has not asked for, or received from Dr. Zhang any Celgard trade secrets or confidential information. Gao Decl. ¶¶ 39-40. Senior developed its separators through years of independent effort, investing heavily in research and development and collaborating with China's top professors and universities. *Id.* ¶ 4-17.

Celgard's conclusory and speculative claim that Senior hired Dr. Zhang as part of a "scheme" to quickly manufacture "copycat separators" is both unsupported and wrong. Celgard cites no evidence (such as forensic analysis, fact witness testimony, or documents) to support its claim or refute the contrary sworn testimony of Dr. Zhang and Mr. Gao. Moreover, Celgard does not point to a single item in its deficient identification of trade secrets that Dr. Zhang improperly disclosed or that Defendants improperly used. Celgard's motion with respect to its trade secret claims fails.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

6

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1    *Lamont*, 2019 WL 2010705, at *3 (denying preliminary injunction where "Plaintiff does not show

2    what trade secrets he alleges were stolen").

3         Bereft of any evidence, Celgard attempts to rely on the "inevitable disclosure" doctrine,

4    conclusorily asserting that Defendants "must" be using Celgard's trade secrets.  That theory fails as

5    a matter of law and is factually untrue.

6         **Inevitable Disclosure Doctrine.**  California courts have squarely rejected the "inevitable

7    disclosure" doctrine—i.e., that "a former employee's new employment will inevitably lead [him] to

8    rely on [his former employer's] trade secrets."  *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d

9    983, 989 (S.D. Cal. 2012); *see also Whyte*, 101 Cal. App. 4th at 1463 ("[T]he inevitable disclosure

10   doctrine cannot be used as a substitute for proving actual or threatened misappropriation of trade

11   secrets.").  Pertinent here is this Court's decision in *Les Concierges, Inc. v. Robeson*, denying a

12   preliminary injunction because "misappropriation cannot, as a matter of California law, be inferred

13   from the fact [defendant], upon voluntarily terminating his employment with [plaintiff],

14   immediately began working for a direct competitor and appears to be performing for his new

15   employer the same or similar job duties he performed while employed by [plaintiff]."  No. C-09-

16   1510MMC, 2009 U.S. Dist. LEXIS 39414, at *4 (N.D. Cal. Apr. 27, 2009).  The same is true here.

17        **Product Claims.**  Celgard claims (without citing any evidence) that "Senior used Celgard's

18   trade secret and confidential information to produce copies of Celgard's separators, optimize its

19   separators and produce 20 new products."  Br. at 13.  Celgard is wrong for three reasons.

20        ***First,*** Senior is not manufacturing "copies" of Celgard's separators.  Senior's separators were

21   independently developed starting many years before Dr. Zhang joined Senior.  Gao Decl. ¶ 4-17;

22   Xiang Decl. ¶ 6-10.  Under both CUTSA and DTSA, independent derivation is a complete defense

23   to alleged trade secret misappropriation.  Cal. Civ. Code § 3426.1(a) ("Reverse engineering or

24   independent derivation alone shall not be considered improper means."); *see also* 18 U.S.C. §

25   1839(6).  Moreover, Senior's separators are distinct from Celgard's.  For example, Senior's

26   separators are manufactured using ███████████████  Gao Decl. ¶ 18-24;

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

Xiang Decl. ¶ 10.  These differences refute Celgard's copying claim.[3]

**Second**, Senior has not used Celgard's trade secrets to "optimize its separators."  Celgard cites Dr. Wensley's comparison of certain properties of Senior's SD216202 separator listed in a datasheet from before Dr. Zhang joined Senior with a datasheet from after Dr. Zhang joined, and concluded the properties improved after Dr. Zhang's arrival.  Wensley Decl. ¶ 42.  Dr. Wensley is simply wrong.  Senior finalized the design and manufacturing processes of the SD216202 ███████ ██████████████████████████████████████.  Gao Decl. ¶ 43; Zhang Decl. ¶ 11; Xiang Decl. ¶ 11.  Thus, Dr. Zhang could not have been involved in those processes, and Celgard's claims of misappropriation with respect to that separator fail.

Regardless, test data show that the SD216202 had measured values consistent with or exceeding those in the post-Dr. Zhang datasheet at least as early as 2014 for every property that Dr. Wensley claims Senior allegedly optimized after Dr. Zhang's arrival.  Gao Decl. ¶ 46, Ex. A. ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ This data refutes Celgard's claim that its alleged trade secrets were used to "optimize" the SD216202 separator.  Similarly, Dr. Wensley improperly compares nominal ranges with measured values; his conclusions based on such faulty analysis should be rejected outright.  *Id.* ¶ 44-45.

**Third**, that Senior introduced products after it hired Dr. Zhang is irrelevant and does not support the entry of an extreme and anti-competitive remedy like the broad injunction Celgard requests.  Senior has consistently introduced new products since its first commercial product in 2008. Gao Decl. ¶ 47; Xiang Decl. ¶ 8-9.  These new products are the fruit of Senior's sizeable increase in its R&D expenditures between 2009 and 2016.  Gao Decl. ¶ 4, 47.  Before Dr. Zhang's arrival, Senior had already developed dry/wet/coated product families, and the majority of the products it currently sells.  *Id.* 12-16, 48-55, 63.  Moreover, ███████████████████████ ████████████████████████████████████████████████████████████████

---

[3] Celgard's trade secret copying allegation cannot be based on its patent infringement claims because the information in a patent is public and, thus, not a trade secret.  *Aqua-Lung Am., Inc. v. Am. Underwater Prods., Inc.*, 709 F. Supp. 2d 773, 787 (N.D. Cal. 2010) ("It is a long-held tenet of patent law that issuance of a patent extinguishes any action for protection of the technology covered by such patent as a trade secret.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY                    8

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1    *Id.* ¶ 47.  This development record contradicts Celgard's conclusory assertion that there

2    was "significant acceleration" in product introductions after Dr. Zhang started with Senior.[4]

3          Last, Celgard's cited cases are inapposite.  In *Waymo LLC v. Uber Techs., Inc.*, the Court

4    granted a preliminary injunction after finding that the plaintiff "ha[d] supplied a compelling record

5    that [a former employee] pilfered over 14,000 files from Waymo."  No. C 17-00939-WHA, 2017

6    U.S. Dist. LEXIS 73843, at \*23 (N.D. Cal. May 11, 2017).  Here, Celgard does not identify a single

7    document that Dr. Zhang improperly disclosed after he left Celgard.  Further, unlike in *Waymo*,

8    where the ex-employee "broadly asserted his Fifth Amendment privilege against self-incrimination"

9    in discovery, *id.* at \*11, Dr. Zhang has declared that he did not disclose any Celgard trade secrets

10   after leaving Celgard.  Zhang Decl. ¶ 6-9.  Similarly, in *Henry Schein, Inc. v. Cook*, the defendant

11   "e-mailed and downloaded, to her personal devices, confidential information . . . before leaving her

12   employment to work at a competitor."  191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016).  Here, Celgard

13   has no evidence of such action by Dr. Zhang or that Defendants used any Celgard information.  *Cf.*

14   Gao Decl. ¶ 39-40; Zhang Decl. ¶ 6-9.

15         **B.    Celgard's Remaining State Law Claims Are Preempted**

16         Celgard separately moves for a preliminary injunction to enjoin Defendants from engaging in

17   acts of intentional interference with contract, unfair competition and induced breach.  Celgard

18   predicates each of those state law claims solely on its trade secret misappropriation claims.  Br. at

19   14 ("Senior has diverted and attempted to divert customers away from Celgard ***through the use of***

20   ***trade secrets misappropriated*** from Celgard. . . . Such conduct, ***which is based on the theft of***

21   ***Celgard's proprietary information*** violates California Business and Professions Code and is an

22   intentional interference with prospective economic relations.");  *see also id.* at 13 n.2.  These state

23   law claims fail for the same reasons as the trade secret claims.

24   _____

25   [4] Celgard's innuendo about Dr. Zhang sometimes being introduced as Bin Wang does not support
     its trade secret misappropriation claim.  Senior and Dr. Zhang were aware that Celgard aggressively

26   sued its competitors.  Gao Decl. ¶ 41; Zhang Decl. ¶ 14.  Consequently, Senior asked Dr. Zhang to
     introduce himself as Bin Wang to avoid drawing Celgard's attention to Dr. Zhang's work for Senior.

27   Gao Decl. ¶ 41; Zhang Decl. ¶ 14.  Senior believed (correctly) that Dr. Zhang's work for Senior
     would motivate Celgard to target Senior in costly and uncalled-for litigation.  Gao Decl. ¶ 41; Zhang

28   Decl. ¶ 14.  This does not show Senior used—or planned to misappropriate—Celgard's alleged
     trade secrets.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY                    9                    DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1   Celgard's state law claims are also preempted because the "gravamen of the wrongful

2   conduct" for those claims is the same as the CUTSA misappropriation claim.  *Mattel, Inc. v. MGM*

3   *Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) (CUTSA "supersedes claims based on the

4   misappropriation of confidential information, whether or not that information meets the statutory

5   definition of a trade secret.").  Thus, the Court should both deny Celgard's motion with respect to

6   those claims and dismiss those claims sua sponte.  *Gabriel Techs.*, 2009 WL 3326631, at *12

7   (dismissing claims where "gravamen of the wrongful conduct is the same").[5]

8   **C.   Celgard Has Not Shown Likelihood Of Success On Its Patent Claims**

9   Celgard accuses a total of twenty Senior products of infringement, yet it only analyzed two.

10   These shortcomings frame Celgard's failure to carry its burden.  In any event, Celgard cannot even

11   make its requisite showing with respect to the two products it analyzes.

12   **1.   Celgard Is Not Likely To Succeed On Claim 12 Of The RE520 Patent**

13   Claim 12 relates to a previous generation of separators for use in lithium metal batteries.  That

14   is in contrast to the separators that Senior designs for use in ***lithium-ion*** batteries.  Abraham Decl.

15   ¶¶ 37-38.  Indeed, the term "lithium-ion battery" does not appear in the RE520 patent.  *Id.* ¶ 37.

16   Thus, Senior deliberately engineers the accused products in a manner that does not infringe claim

17   12.  In addition, claim 12 is invalid as indefinite and as obvious over a prior art combination not

18   previously considered by the PTO or PTAB.

19   ***a.   No Direct Infringement***

20   Celgard concedes that the four RE520 accused products do not literally meet every claim

21   limitation and relies exclusively on the doctrine of equivalents ("DOE").  But as a matter of law,

22   Celgard's DOE theory is barred because Celgard surrendered the allegedly equivalent subject

23   matter.  Celgard's theory also fails on the merits.  And as to claim limitations it contends are literally

24   met, Celgard relies on overbroad constructions (under the guise of "plain meaning") that contradict

25

26   _____
    [5] *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08-3931 RS, 2009 WL 55178, at *5 (N.D. Cal.
    Jan. 7, 2009) ("If the 'trade secret' facts are removed from claims [of unfair competition and

27   intentional interference], neither retains sufficient independent facts to survive."); *K.C. Multimedia,
    Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (same); *Farmers
    Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-CV-00784, 2013 WL 3872950, at *9 (E.D. Cal. July

28   25, 2013) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

10

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

the intrinsic record.  The RE520 accused products do not meet those limitations, as properly construed.

<u>No Alleged Equivalent Of "a matrix material consisting of polyethylene oxide, polyvinylidene fluoride, polytetrafluoroethylene, copolymers of the foregoing, and mixtures thereof"</u>

Celgard relies solely on the DOE to argue infringement of this limitation.  Br. at 15-16.  "[E]quivalents cases are *'highly factual inquir[ies] [that] rarely com[e] clear on a premature record,'*" particularly in the preliminary injunction context.  *Mylan*, 857 F.3d at 866.  DOE "is a limited remedy available in special circumstances."  *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001).[6]

Celgard and its expert speculate that Senior's products ███████████████ which they contend is equivalent to the "matrix material" of claim 12.  Br. at 15-16.  That is incorrect. ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███ in Senior's four accused products is not equivalent for two key reasons.

***First,*** prosecution history estoppel bars Celgard's DOE theory as a matter of law.  "[C]lear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim," bar equivalence where "a competitor would reasonably believe that the applicant had surrendered the relevant subject matter."  *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159-60 (Fed. Cir. 2019).  That controls here.

In prior IPR proceedings,[7] Celgard clearly and unmistakably surrendered ████████ from the scope of claim 12's "a matrix material."  Celgard, along with Dr. White, argued that the disclosure of ███████████████ in a prior art reference ("Tojo") did not "in any way relate to" the specific polymers and copolymers recited in claim 12.  Abraham Decl. ¶¶ 121-25 (discussing relevant parts of IPR record). ██████████████████████████  Celgard is thus estopped from recapturing it through the

---

[6] *See also Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1029 (Fed. Cir.), *reh'g granted, op. modified*, 776 F. App'x 707 (Fed. Cir. 2019).

[7] The proceedings involved U.S. Patent No. 6,432,586, from which claim 12 reissued in identical form other than removal of the words "and the like."  *See* Abraham Decl. ¶ 36.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

11

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST



1  DOE. *Amgen*, 931 F.3d at 1159.  This estoppel also applies to Celgard's incorrect identification of

2  ███████████████████████████████████████  *Id.* ¶¶ 126-27, 129.

3       Additionally, claim differentiation confirms Celgard's DOE theory is inapplicable.  ███

4  ████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ██████████████████  *Id.* ¶ 166-67.  That confirms Celgard knew how to claim

10  ████████  but chose to exclude them from claim 12.  *Id.*

11       ***Second,*** even if Celgard's reliance on the DOE was not barred (it is), Celgard's DOE theory

12  fails on the merits.  Celgard's brief relies only on the "function-way-result" ("FWR") test.  Br. at

13  15-16.  Dr. White likewise focuses on FWR and includes a cursory discussion of "insubstantial

14  differences."  White Decl. ¶¶ 113-18.  However, neither ever addresses the differences in chemical

15  structure between the alleged equivalent and the specific compounds in claim 12.  That is fatal

16  because "[c]hemical compounds are characterized by their structures."  *Mylan*, 857 F.3d at 869.

17  Thus, a FWR analysis may be "flawed by being unduly truncated and hence incomplete" when it

18  does not capture the substantial differences between chemical structures and other properties.  *Id.* at

19  867.

20       When—as in claim 12—"compounds [are] expressly named," an equivalence analysis "must

21  not take lightly the specific recitation of these materials."  *Id.* at 869.  That is especially true here

22  because "selected from the group consisting of" "is a term of patent convention meaning that the

23  claimed invention contains only what is expressly set forth."  *Multilayer Stretch Cling Film*

24  *Holdings v. Berry Plastics Corp.*, 831 F.3d 1350, 1357-58 (Fed. Cir. 2016).  Dr. Abraham explains

25  why ████████████████ in Senior's products is substantially different from the polymers and

26  copolymers named in claim 12.  Abraham Decl. ¶¶ 131-38.  The molecules in ████████████

27  ████████  have  substantially  different  structures  and  functional  groups,  which  impart

28  substantially different physical properties, such as porosity, tensile strength, and adhesion.  *Id.* ¶¶

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

12

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

134-38.

Dr. Abraham also explains that Celgard's analysis is flawed for at least two additional reasons. ███████████████████████████████████████████████████. White Decl. ¶¶ 86-87; *cf.* Abraham Decl. ¶ 116.  This is of no moment because the only relevant comparison is between Senior's product and the claim limitation.  *Choon's Design, LLC v. IdeaVillage Prod. Corp.*, 776 F. App'x 691, 698 (Fed. Cir. 2019).  ███████████████████████████.  Second, Celgard erroneously equates the claimed "matrix material" to a "binder," a word that never appears in the RE520 patent.  White Decl. ¶¶ 85-88.  In turn, Celgard's FWR analysis contradicts the patent's own description of the function, way, and result of the claimed "matrix material."  Abraham Decl. ¶¶ 149-50, 158, 162.  ███████████████████ in Senior's accused products is not "a matrix material" as required by claim 12, and does not satisfy the FWR test.  *Id.* ¶¶ 149-57.  To the contrary, ██████████████████████████████████████████████████████████████████████████████████; it does not function as a "matrix material."  *Id.* ¶¶ 151-53, 159-61, 163-65; Gao Decl. ¶¶ 56-57.

<u>No "ceramic composite layer or coating"</u>

The RE520 accused products do not have a "ceramic composite layer or coating" as required by claim 12.  The specification is clear that the claimed ceramic composite layer is "***nonporous***" and that, to the extent any pores are formed, it is only "once in contact with an electrolyte."  RE520 at 3:11-15; *see Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("The specification is "usually . . . dispositive" and "the single best guide to the meaning of a disputed term").  Moreover, Celgard argued during prosecution of a related patent application that any potential "pores" that may be formed upon contact with the electrolyte are merely intermolecular gaps that would be formed naturally between polymer chains of the matrix.  Abraham Decl. ¶¶ 88-89; *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1312 (Fed. Cir. 2014), *overruled on other grounds by* 792 F.3d 1339 (Fed. Cir. 2015) (statements made before a foreign patent office are relevant to claim construction).  The proper construction for this term is a ceramic layer that is nonporous.  Abraham Decl. ¶ 84.

███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1                 . Gao Decl. ¶ 58; Abraham Decl. ¶ 106.

2                 *Id.* ¶ 107.

3           <u>No "adapted to at least block dendrite growth and to prevent shorting"</u>

4      The RE520 accused products do not have a ceramic composite layer that is "adapted to at least

5 block dendrite growth and to prevent shorting" as required by claim 12.  This term should be

6 construed to mean "having an impermeable physical barrier that completely blocks dendrite growth

7 through the separator and prevents electronic shorting." *Id.* ¶¶ 96-100.  Absent this construction,

8 claim 12 is invalid as indefinite because a person of ordinary skill in the art ("POSA") lacks

9 "reasonable certainty" about the extent to which dendritic growth must be blocked to satisfy this

10 limitation.  *Id.* ¶¶ 180-81; *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

11      Celgard performed no testing to show that the ceramic composite layer or coating is adapted

12 to block dendritic growth and prevent shorting, let alone completely.  Br. at 16; White Decl. ¶¶ 119-

13 23; *cf.* Abraham Decl. ¶¶ 168-72.  Celgard instead relies on general statements about the safety

14 features of batteries and separators.  Br. at 16; White Decl. ¶¶ 119-23.  These statements have no

15 connection to the RE520 accused products.  Abraham Decl. ¶¶ 169-71.  Moreover, dendrites are

16 typically blocked only by a nonporous, physical barrier. *Id.* ¶ 174.

17                                       . *Id.*; Gao Decl.

18 ¶ 58.

19         **b.**    **No Indirect Infringement**

20      Celgard's cursory indirect infringement allegations (for both asserted patents) fail for two

21 reasons.  First, Celgard fails to show direct infringement in the U.S. by a third party, a long-standing

22 requirement for indirect infringement.  *Standard Havens Prod., Inc. v. Gencor Indus., Inc.*, 953 F.2d

23 1360, 1374 (Fed. Cir. 1991).  Celgard makes only a vague reference to "downstream customers,"

24 without identifying particular entities or activities in the U.S. *Id.*; Br. at 18; Abraham Decl. ¶¶ 176-

25 77, 302-03.  Second, Celgard fails to show Defendants' knowledge of, or willful blindness to, the

26 existence of the asserted patents and directly infringing acts, as required for inducement.[8] *Commil*

---

27 [8] Celgard cites, Br. at 18, the prior "knew or should have known" standard that the "[Supreme]
Court rejected." *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1366 (Fed. Cir. 2013),
28 *vacated in irrelevant part by* 135 S. Ct. 1920 (2015).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY
14
DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

*USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1928 (2015).  Celgard admits that it must show "[e]vidence of active steps" of inducement by Defendants, Br. at 18, but fails to point to any such acts.  Abraham Decl. ¶¶ 176-77, 302-03.

### c.   Claim 12 Is Invalid

Claim 12 would have been obvious based on Chang—a lead reference that has never been considered by the PTO or PTAB—in view of Venugopal or Hasegawa.  Dr. Abraham explains that these combinations disclose every limitation of claim 12, and demonstrates why a POSA would have had reason to combine the art with a reasonable expectation of success.  Abraham Decl. ¶¶ 182-34.

### 2.   Celgard Is Not Likely To Succeed On Claim 17 Of The '867 Patent

Claim 17 of the '867 patent relates to a microporous membrane having a particular composition.  Abraham Decl. ¶ 40.  It is invalid and/or not infringed for several reasons.

### a.   Claim 17 Is Invalid

Claim 17 is anticipated under § 102(b) due to the on-sale bar and under §102(a) because the purported invention was known or used by others in the U.S. more than one year before the October 12, 2001 filing date of the '867 patent.

Celgard sold prior art products in the U.S. under the name "CELGARD® 2300" and "CELGARD® 2400."  '867 patent at 1:62-65; Abraham Decl. ¶¶ 261-62.  The specification provides information about those products.  *Id.* ¶¶ 244-60.  For example, it describes product "C1" as a "commercially available membrane[] (prior art, PA) sold under the name CELGARD® 2400."  '867 patent at 3:40-44; Abraham Decl. ¶ 248.  It likewise describes product "C3 (PA)" as a "commercially available product[], CELGARD® 2300."  '867 patent at 1:61-65; Abraham Decl. ¶ 255.  Dr. Abraham demonstrates how the specification establishes that the prior art products "C1" and "C3" met every limitation of claim 17.  *Id.* ¶¶ 265-73.  The patent's admissions about the prior art are "binding on . . . [Celgard] for determinations of anticipation and obviousness."  *WesternGeco LLC v. ION Geophysical Corp.*, 889 F.3d 1308, 1329 (Fed. Cir. 2018); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1362 (Fed. Cir. 2007) (no "unfairness in holding the inventors to the consequences of their admissions").

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

15

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1   Claim 17 is also anticipated by the Ito prior art reference under § 102(b).  Ito was not before

2   the PTO during prosecution.  Abraham Decl. ¶ 274.  Dr. Abraham explains how Ito discloses every

3   limitation of claim 17.  *Id.* ¶¶ 275-84.  Finally, claim 17 would have been obvious based on Ito,

4   alone, or in view of Nishiyama.  Dr. Abraham demonstrates that this combination discloses every

5   limitation of claim 17, and explains why a POSA would have had reason to combine the art with a

6   reasonable expectation of success.  *Id.* ¶¶ 307-30.

7         **b.**    ***Celgard Did Not Argue That The Preamble Is Limiting – But It Could Only Confirm Non-Infringement and Invalidity***

8
9         Celgard did not argue that the preamble of claim 17 is limiting.  Br. at 17; White Decl. ¶ 150

10   n.64.  In any event, the preamble can only establish that claim 17 is invalid or not infringed.

11         The words "improved pin removal properties" in the preamble can only have the express

12   definition in the specification: "Accordingly, battery manufacturers desire separator tapes that have

13   ***improved pin removal properties, i.e., separators that will not stick to the pin when the battery***

14   ***assembly is removed therefrom*."  '867 at 1:21-23; *Edwards Lifesciences LLC v. Cook Inc.*, 582

15   F.3d 1322, 1334 (Fed. Cir. 2009) (use of "i.e." in specification "signals the patentee's intent to

16   define the word to which it refers").

17         Celgard does not address "improved pin removal properties."  Br. at 17.  Dr. White makes the

18   conclusory assertion that based on his "training, education, and experience" each of the accused

19   products have improved pin removal properties.  White Decl. ¶ 150.  In support of this assertion, he

20   merely cites to every exhibit he considered without any analysis.  *Id.*  Those exhibits are silent about

21   "improved pin removal properties," as the term is defined in the specification.  Abraham Decl. ¶

22   295.  Consequently, there is no infringement of that preamble limitation.  In addition, Celgard has

23   not shown that the '867 accused products contain the recited "calcium stearate."  *Id.* at ¶¶ 296-300.

24         If "improved pin removal properties" does not mean what the patent's express definition says

25   it means, then the language is indefinite.  "The claims, when read in light of the specification and

26   the prosecution history, must provide ***objective boundaries***" to a POSA.  *Interval Licensing LLC v.*

27   *AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).  Claim 17 does not.  The word "improved" requires

28   a baseline for comparison.  Abraham Decl. ¶ 305.  Neither the specification nor the prosecution

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

16

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

history identifies one. *Id.* To the contrary, the specification adds uncertainty. It indicates that the prior art commercial product "C1 (PA)" had a "Pin Removal Force (g)" of 6500 g, which is ***lower*** (i.e., required less force) than examples that "illustrate the present invention," Sample 1 (6700 g) and Sample 2 (6600 g). '867 patent at 3:44-46 & Table 1; Abraham Decl. ¶ 253, 267; *see also id.* ¶ 268 (regarding prior art product "C3 (PA)"). A POSA could therefore not determine any objective boundary between the non-infringing features of the admitted prior art and claim 17. *Id.* ¶¶ 305-06.

## V. CELGARD CANNOT SHOW IRREPARABLE HARM WITHOUT AN INJUNCTION

Celgard "must make a clear showing that it is at risk of irreparable harm" by establishing three elements: (1) substantial and immediate harm (2) that cannot be compensated by monetary damages, and (3) a causal nexus between that harm and its allegations. *Apple Inc. v. Samsung Elec. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012). Celgard cannot meet its burden.[9]

### A. Celgard Cannot Establish Substantial And Immediate Harm

Celgard delayed seeking relief for at least fifteen months after learning of Dr. Zhang's employment with Senior, and years after the launch of many of Senior's accused products. That fact is dispositive. Celgard has known that Dr. Zhang was at Senior since at least May 2018, when Celgard's CEO asked Senior employees if he could meet with Dr. Zhang. Gao Decl. ¶ 42. Celgard described the allegations that form the basis of this suit in a February 2019 letter to Senior. Wensley Decl., Ex. 3. Yet Celgard waited another seven months to file suit and another one and a half months to (implausibly) claim immediate and irreparable harm. Courts routinely find a plaintiff's delay of several—let alone fifteen—months dispositive of a plea of irreparable harm.[10] Celgard has not

---

[9] Celgard contends that its trade secret allegations "***presumptively*** constitute[] irreparable harm." Br. at 19. That is incorrect. Courts may not presume irreparable harm unless instructed by statute. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006). Here, the relevant trade secret statutes have no such instruction. *See* 18 U.S.C. § 1836(b)(3)(A)(i); Cal. Civ. Code § 3426.2(a); *DLMC, Inc. v. Flores*, No. CV 18-00352, 2018 WL 6682986, at *4 (D. Haw. Dec. 19, 2018) ("[I]rreparable harm . . . cannot be presumed in DTSA cases."). Celgard relies on decisions expressly discussing the narrow context of a targeted injunction barring imminent dissemination of trade secrets from a source that a plaintiff has specifically identified. Br. at 19. Here, rather than seeking an injunction targeted to a particular file, electronic device, or other source, Celgard seeks an intrusive injunction sweeping against most of Senior's business activities. *See infra*, at 23-24. Its authority is therefore inapposite.

[10] *See, e.g.*, *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) ("substantial" seventeen-month delay shows "no apparent urgency . . . for injunctive relief"); *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-cv-04948-HSG, 2017 WL 2903143, at *3 (N.D. Cal. July 7, 2017) (injunction denied because of delay from "early 2016" until filing of

offered any excuse for its delay.  Celgard's lackadaisical disinterest for fifteen months belies its newly professed urgency for extraordinary relief.  In any event, Celgard has not shown it actually faces any of its alleged irreparable harms.

***First***, Celgard fails to show any loss of sales, market share, or business relationships.  Celgard "estimates" that it lost business based on a declarant's conclusory statements that "each sale of [Senior's accused products] results in … a lost ***potential*** sale for Celgard."  Br. at 9-10 (citing McCallum Decl. ¶ 56).[11]  But as a matter of law, such "speculative loss of market share" is insufficient for irreparable harm.  *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009).  As Senior and Celgard each hold only ▮ of the separator market, it is unlikely that a given sale by Senior takes one from Celgard.  Pillot Decl. ¶¶ 37-44; McCallum Decl. ¶ 53.  Indeed, Celgard's parent ***admitted*** this month that Celgard has not lost sales: despite "Chinese competitors [] offering customers fairly low prices" for separators, "the switch or replacement [to lower-cost products] has not occurred."  Wheeler Decl., Ex. 1 at 6.

Celgard argues that it lost a contract with ▮▮▮▮ to Senior.  Br. at 10.  But Celgard's supposed evidence is a contract between Senior and ▮▮▮▮ ▮▮▮▮; *see also* Pillot Decl. ¶ 63.  This contract is part of a longstanding relationship between Senior and ▮▮▮▮ Gao Decl. ¶ 28-31.  Celgard's alleged lost sale to ▮ ▮▮▮▮ simply had nothing to do with Senior.  Celgard's declarant also asserts that Celgard "▮▮▮▮."  McCallum Decl. ¶ 59.  Again, ▮▮▮▮ and thus caused no recent lost sale, and certainly no lost sale based on any allegation in Celgard's motion.  Gao Decl. ¶ 32-36.[12]

---

suit in August 2016); *Lilith Games (Shanghai) Co. v. UCool, Inc.*, No. 15-cv-01267-SC, 2015 WL 5591612, at *12 (N.D. Cal. Sept. 23, 2015) (eight-month delay weighs against irreparable harm); *Eros Tours & Travel, Inc. v. Infinitywaves, LLC*, No. CV 14-5095, 2015 WL 11457691, at *3 (C.D. Cal. Feb. 9, 2015) (ten-month "delay alone warrant[ed] denial" of preliminary injunction).

[11] Mr. McCallum's ▮▮▮▮ are also wrong, further demonstrating the speculative nature of Celgard's arguments.  Pillot Decl. ¶¶ 58-63.

[12] Celgard's supporting declaration states: ▮▮▮▮ ▮▮▮▮," although its brief never mentions these customers.  McCallum Decl. ¶ 59.  As with ▮▮▮▮, Celgard can show no lost sale because ▮▮▮▮.  Gao Decl. ¶ 37.

1    **Second**, Celgard's delay in filing suit also belies its claim that the expiration of the RE520

2    patent in 2020 is a basis for irreparable harm. *See Finjan, Inc. v. Blue Coat Sys., LLC*, No. 15-cv-

3    03295-BLF, 2016 WL 6873541, at *8-9 (N.D. Cal. Nov. 22, 2016) ("It seems incongruous to find

4    that alleged infringement during the final two months of this patent would cause irreparable harm

5    when Finjan's actions suggest that alleged infringement during two or more months preceding that

6    period would not.").

7    **Third**, Celgard fails to show ███████. Celgard must introduce evidence that it has

8    ████████████████████████████. *Integra Lifesciences Corp. v. Hyperbranch*

9    *Med. Tech., Inc.*, No. CV 15-819, 2016 WL 4770244, at *16 (D. Del. Aug. 12, 2016). But Celgard's

10   parent admitted that "we don't believe there is [a] big collapse in the market price" for separators

11   despite ████████████████. Wheeler Decl., Ex. 1 at 6. Consistent with that admission, Celgard

12   does not show ████████████████. Instead, without any evidentiary basis whatsoever,

13   Celgard baldly asserts that it "████████████████████████████████████

14   ████████" in light of Senior's competition. McCallum Decl. ¶ 66.[13]

15   **Fourth**, Celgard fails to show harm to its reputation and goodwill. Celgard provides no

16   evidence, for example, that the accused products are "an inferior or cut-rate version" of Celgard's,

17   or are "considered less innovative or prestigious." *Wavetronix LLC v. Iteris, Inc.*, No. A-14-CA-

18   970, 2015 WL 300726, at *8 (W.D. Tex. Jan. 22, 2015). Celgard instead relies on conclusory

19   statements in a declaration, Br. at 24, which "are insufficient to support a finding of irreparable

20   injury." *Peregrine Semiconductor Corp. v. RF Micro Devices, Inc.*, No. 3:12-CV-0911, 2014 WL

21   67509, at *3 (S.D. Cal. Jan. 8, 2014).

22   **Fifth**, Celgard argues it was harmed by its "loss of the right to exclude," relying solely on

23   *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1580-81 (Fed. Cir. 1983).[14] But the Supreme

---

[13] Celgard bases its arguments of ███████ on its theory that unidentified Chinese government subsidies somehow allow Senior to discount its products. Br. at 22. The reason why ████████ ████████ is irrelevant. And if subsidies even matter to this analysis, Celgard has benefited from the Recovery Act and other subsidies. Jesse Lee, *On Jobs: "We are Beginning to Turn the Corner"* (Apr. 2, 2010), https://obamawhitehouse.archives.gov/blog/2010/04/02/jobs-we-are-beginning-turn-corner.

[14] Celgard also cites *Celsis In Vitro, Inc. v. CellzDirect, Inc.* for this proposition, but it addresses "balancing of harms," not irreparable harm. 664 F.3d 922, 931 (Fed. Cir. 2012).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

19

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1    Court rejected that theory of harm in *eBay*.  *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d

2    1142, 1149 (Fed. Cir. 2011) (*eBay* overruled *Smith Int'l*).

3    **B.    Celgard Fails To Establish The Inadequacy Of Monetary Damages**

4        Celgard fails to establish that any alleged harms could not be redressed by a monetary award.

5    "Straight forward monetary harm . . . is not irreparable harm."  *ActiveVideo Networks, Inc. v.*

6    *Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1338 (Fed. Cir. 2012).  And there is no irreparable harm

7    where a patentee has been willing to license the asserted patents (i.e., "willing to forgo its patent

8    rights for compensation").  *See, e.g.*, *High Tech. Med.*, 49 F.3d at 1557; *T.J. Smith & Nephew Ltd.*

9    *v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987).  Indeed, in Celgard's prior case

10   against LG Chem, the Federal Circuit rejected Celgard's irreparable harm theory because Celgard

11   had previously licensed the patent-in-suit (of which the asserted RE520 patent is a reissue).

12   *Celgard, LLC v. LG Chem, Ltd.*, 624 F. App'x 748, 753 (Fed. Cir. 2015).  The same follows here.

13       Indeed, since that decision, Celgard's licensing activities have only expanded.  Celgard has

14   repeatedly licensed and offered to license its intellectual property—including an offer to Senior to

15   discuss a license and/or supply agreement covering all trade secrets and patents at issue here:

16       Celgard notes that Senior entered into a license agreement with LG Chem.  If Senior is serious
         on resolving these violations and settling this matter with Celgard in a business like fashion,
17       Celgard leaders may be willing to discuss supply and license opportunities with Senior.

18   Wensley Decl., Ex. 3.  Celgard previously filed lawsuits asserting its intellectual property against

19   five different separator or lithium-ion battery companies.  All ended in settlement (presumably with

20   license agreements) notwithstanding Celgard's claims of irreparable harm.[15]

21       Individually or collectively, Celgard's acts show a readiness to license the asserted

22   intellectual property that forecloses Celgard's allegations of irreparable harm.  Any harm to Celgard

23

---

24   [15] *See Celgard, LLC v. Sumitomo Chem. Co.*, No. 3:13-cv-00122 (W.D.N.C.); *Celgard, LLC v. SK
     Innovation Co.*, No. 3:13-cv-00254 (W.D.N.C.); *Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-cv-
25   00043 (W.D.N.C.); *Celgard, LLC v. MTI Corp.*, No. 5:18-cv-07441 (N.D. Cal.); *Celgard, LLC v.
     Targray Tech. Int'l Inc.*, No. 5:19-cv-02401 (N.D. Cal.); (*see also* Dkt. No. 1 at 66, 75 (describing
26   "license agreement" with Sumitomo)).  Here, Defendants served narrow interrogatories on Celgard
     seeking identification of the relevant licenses, but Celgard contends confidentiality obligations bar
27   it from providing that information in time for Defendants to incorporate it here.  Wheeler Decl.,
     Exs. 2, 3.  In light of Celgard's burden, the Court should infer that Celgard's responses would show
28   monetary damages are adequate.

1    would be in the form of missed royalty payments or lost sales.[16]   Such injuries are readily

2    compensable by monetary damages.  *See*, *e.g.*, *Automated Merch.*, 357 F. App'x at 301.

3    **C.   Celgard Fails To Establish A Causal Nexus**

4    Even if Celgard had shown irreparable harm (it has not), Celgard has not shown a nexus to

5    Defendants' purportedly improper conduct.  *See Apple Inc.*, 695 F.3d at 1374; *Nat'l Wildlife Fed'n*

6    *v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018).  This is so for two reasons.

7    ***First***, Celgard provides no evidence linking the Senior sales that Celgard relies upon to any

8    alleged infringement or misappropriation.  And the following facts conclusively refute any linkage:

9    •    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—years before

10       Dr. Zhang joined Senior.  Those sales cannot be secured by the accused activity.

11   •    Celgard only attempts to introduce evidence of misappropriation for a single product. ▮▮

12       ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see supra at* Section IV.A.2, and its presence in
         the market cannot have suddenly caused lost sales.  Gao Decl. ¶ 46.

13   •    Senior's market success is not due to the technology Celgard accuses to be infringed and/or
         misappropriated.  Since 2003, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14       ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15       ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16       Gao Decl. ¶¶ 25-27.  Finally, Senior's location in Asia positions it to take advantage of the
         rapid rise in Asia-based cell manufacturing.  Pillot Decl. ¶¶ 45-53.

17   Moreover, Celgard's own evidence indicates that its complaints stem from a different source:

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  According to Celgard's Director of Strategic Marketing, ▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  McCallum Decl. ¶ 48; *see also* Pillot Decl.

21   ¶¶ 54-56.  In other words, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮   *Nichia Corp. v. Everlight Am., Inc.*, 855 F.3d 1328, 1343 (Fed. Cir. 2017).  Therefore,

23   far from showing the required causation, the evidence proves the opposite.

24   ***Second***, Celgard cannot show causal nexus for its patent claims because its alleged harms stem

25   from extraterritorial activity that does not constitute infringement under U.S. patent law: "no

26   infringement occurs when a patented product is made and sold in another country."  *Microsoft Corp.*

---

27   [16] Celgard's brief tacitly admits as much: its only explanation for why its lost sales are not
28   compensable is speculation that Celgard "***could***" be shut out of the EV and CE markets "for years,
     if not permanently" and lose customers "***potentially*** permanently."  Br. at 21-22.

1    *v. AT&T Corp.*, 550 U.S. 437, 441 (2007).  Celgard identifies four customers that it allegedly lost

2    due to Senior's activities: ███████████████████████████████.  Br. at 10;

3    McCallum Decl. ¶ 59.  But Senior manufactures the accused products in China and ███████

4    ███████████████████████████.  Gao Decl. ¶ 31, 36-37.  As Senior's extraterritorial

5    activity cannot infringe under U.S. patent law, there can be no nexus to Celgard's alleged harms.

6    **VI.   THE BALANCE OF HARDSHIPS WEIGHS AGAINST AN INJUNCTION**

7          Celgard cites a district court's previous issuance of a preliminary injunction against LG Chem

8    to support its argument that the balance of harms weighs in its favor.  Br. at 24-25.  Celgard ignores

9    that the Federal Circuit ***reversed*** that injunction, concluding that the court had "abused its discretion

10   in balancing the equities" and that any alleged harm was "adequately compensable by money

11   damages."  *Celgard* , 624 F. App'x at 754.  As set forth above, the same is true here.  The Federal

12   Circuit also explained that because Celgard did not practice its patent, "it will not be forced to

13   compete against its own product," underscoring that any alleged harm is compensable.  *Id.*

14   Likewise, here, Celgard does not contend (let alone prove) that it practices the asserted claims.

15         In contrast, Senior would face serious hardships from Celgard's sweeping injunction that

16   encompasses all "discussions with current or potential customers" and any act "inducing

17   infringement."  Dkt. 43-3, ¶¶ 5-7.  That would bring core aspects of Senior's business to a halt.  The

18   consequences to Senior would go even beyond potentially having "to stop production or sales, which

19   could affect its relationships with its customers," a harm the Federal Circuit has recognized weighs

20   against a preliminary injunction.  *Celgard*, 624 F. App'x at 754.

21   **VII.  THE PUBLIC INTEREST DOES NOT FAVOR AN INJUNCTION**

22         Celgard asserts that "Senior can point to no serious public harm" from an injunction.  Br. at

23   25.  Not true.  If an injunction issues, downstream companies that manufacture batteries and use

24   batteries in products (e.g., consumer electronics, electric vehicles) will suffer.  Pillot Decl. ¶¶ 22-

25   26. Such an injunction also robs the public of the significant environmental benefits from affordable

26   batteries containing Senior's technology.  *Id.* at ¶¶ 27-36.  Celgard argues that the public has a

27   general interest in "enforcement of intellectual property."  Br. at 25.  Putting aside lack of success

28   on the merits, that assertion "cannot control in every case without obliterating the public interest

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

22

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1   component of the preliminary injunction inquiry." *Cordis Corp. v. Bos. Sci. Corp.*, 99 F. App'x

2   928, 935 (Fed. Cir. 2004). Again as in *Celgard v. LG Chem*, Celgard does not claim to sell products

3   that practice the intellectual property at issue, so if Senior "were enjoined, the public may be

4   completely denied the availability of any products that [Celgard alleges] practice this invention."

5   624 F. App'x at 754.

6   **VIII. CELGARD'S REQUESTED PRELIMINARY INJUNCTION IS OVERBROAD**

7          Independent of Celgard's failure to make a "clear showing" justifying the "extreme remedy"

8   it seeks, *Winter,* 555 U.S. at 24, the Court should deny Celgard's preliminary injunction because its

9   scope is unwarranted.

10          ***With respect to its trade secret claims***, Celgard asks the Court to prevent Defendants from

11   using its trade secrets and require Defendants to turn over any documents or proceeds from the

12   alleged misappropriation. Dkt. 43-3. The injunction would also enjoin Defendants "from engaging

13   in discussions with current or potential customers regarding sales or potential sales of their separator

14   products." *Id.* ¶ 7(a)-(f). Celgard's vague and unfounded allegations do not support that relief.

15          Because Celgard's proposed order defines the alleged trade secrets without sufficient

16   specificity to show "at least the boundaries within which the secret lies," the scope of the injunction

17   is too uncertain. *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968). Courts routinely deny

18   requests for injunctive relief where, as here, the plaintiff uses "expansive language" to describe its

19   alleged trade secrets, effectively seeking to "enjoin [defendants] from using [] a limitless swath of

20   information." *Citcon USA*, 2019 WL 2603219, at *2.

21          Celgard's proposed relief requiring Defendants to turn over any documents or proceeds from

22   the alleged misappropriation is also improper, unnecessary, and premature. "The primary purpose

23   of a preliminary injunction is to preserve the status quo pending a determination of the action on its

24   merits"; preliminary injunctions requiring affirmative acts are "particularly disfavored." *Hubner v.*

25   *Mayer*, No. CV-15-02965-MWF, 2015 U.S. Dist. LEXIS 193902, at *12-13 (C.D. Cal. June 8,

26   2015) (citations omitted). ████████████████████████████████

27   ████████████████████████████████████████████, so there is no basis to enter the extreme

28   relief requested, as such matters will be addressed through discovery. Zhang Decl. ¶ 10.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

23

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1   Celgard also seeks to enjoin Defendants from "from engaging in discussions with current or

2   potential customers regarding sales or potential sales of [its] separator products."  Dkt. 43-4 at 5.

3   That would effectively prohibit Senior from conducting business.  Beyond its failure to show

4   likelihood of success on its trade secret claims, such relief is improper because it would preclude

5   legitimate competition with separator products that not even Celgard claims were produced using

6   Celgard's trade secrets or infringes its patents (*see supra* A.1).  *See Western Directories, Inc. v.*

7   *Golden Guide Directories, Inc.*, No. C 09-1625, 2009 WL 1625945, at *7 (N.D. Cal. June 8, 2009)

8   (denying "overbroad" injunction that "would essentially shut down" defendant).  The anti-

9   competitive provisions of Celgard's proposed order relating to customer contacts warrant denial.

10   ***With respect to Celgard's patent infringement claims***, Celgard again overreaches by

11   attempting to expand the injunction to prohibit a vague set of conduct that does not violate patent

12   law.  First, patent law encompasses "mak[ing], us[ing], offer[ing] to sell, or sell[ing]" an accused

13   product in the U.S. or "import[ing]" it into the U.S.  35 U.S.C. § 271(a).  Celgard's injunction would

14   include this list of activities and adds "distributing, shipping, advertising, [and] marketing" in the

15   U.S.  (Dkt. No. 43-3 at ¶¶ 5-6.)  These additional activities are at best redundant and at worst an

16   attempt to reach beyond conduct covered by the law.  *E.g.*, *Ziptronix, Inc. v. Omnivision Techs.,*

17   *Inc.*, 71 F. Supp. 3d 1090, 1096-97 (N.D. Cal. 2014) (finding that negotiating and contracting in the

18   U.S. does not violate U.S. law when the infringing "sale" took place outside of the U.S.).  Either

19   way, they should be stricken.  Second, Celgard's proposed injunction seeks to sweep in a laundry

20   list of additional conduct.  This list includes conduct, such as "assisting, aiding, or abetting"

21   infringement, that U.S. patent law does not prohibit.  (Dkt. No. 43-3 at ¶¶ 5-6.)  It also includes

22   "inducing infringement" despite Celgard's failure to point to a single action by Defendants that

23   induces infringement, leaving Defendants without any indication as to what an injunction against

24   "inducing" prohibits them from doing.  *Id.*  This laundry list thus overreaches.

25   ## IX.   CONCLUSION

26   For the foregoing reasons, Celgard has not shown that it entitled to the extraordinary remedy

27   requested.  Accordingly, the motion for preliminary injunction should be denied.

28   Dated: December 6, 2019           Respectfully submitted,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY                24

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP

/s/ Kevin C. Wheeler
Kevin C. Wheeler (Bar No. 261177)
Gregory K. Sobolski (Bar No. 267428)

*Attorneys for Defendants Shenzhen Senior Technology Material Co. Ltd. (US) Research Institute, and Shenzhen Senior Technology Material Co. Ltd.*

HIGHLY CONFIDENTIAL -
OUTSIDE COUNSELS' EYES ONLY

25

DEFENDANTS' OPP. TO CELGARD'S MOTION
FOR A TRO AND PRELIMINARY INJUNCTION
CASE NO. 4:19-cv-5784-JST