UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELGARD, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>SHENZHEN SENIOR TECHNOLOGY MATERIAL CO. LTD. (US) RESEARCH INSTITUTE, et al.,<br><br>        Defendants. | Case No. 19-cv-05784-JST<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 43; 131 |

Before the Court is Defendant Shenzhen Senior Technology Material Co. Ltd.'s motion to dismiss, ECF No. 130-3, and Plaintiff Celgard, LLC's motion for preliminary injunction, ECF No. 42-2. The Court will grant the motion to dismiss and deny the motion for preliminary injunction.[1]

## I. BACKGROUND

### A. Factual Background

Plaintiff Celgard, LLC is a U.S. manufacturer of "separators used in lithium-ion batteries for consumer electronic ("CE") devices and electric vehicles ("EVs")." ECF No. 95 ¶¶ 2, 19. The separators that Celgard manufactures "sit between a battery's electrodes—the anode and the cathode" and serve as "thin electrically insulating sheets" to prevent contact between the battery's electrodes. *Id.* ¶ 3; *see Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1375-76 (Fed. Cir. 2015). Celgard has obtained a patent for a "new separator" which addresses the problem of dendrite growth[2] in lithium-ion batteries, United States Reissued Patent RE47,520 ("the '520

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds these matters suitable for disposition without oral argument. The hearings on these matters, currently scheduled for February 12, 2020, are hereby vacated.

[2] Dendrite growth refers to the "irregular growth of lithium metal when it is plated onto an

patent"). ECF No. 95 ¶ 6. Celgard has also obtained a patent for a "separator technology" which addresses "safety and durability problems in lithium batteries," United States Patent No. 6,692,867 ("the '867 patent"). *Id.* ¶¶ 6, 58.

Defendant Shenzhen Senior Technology Material Co. Ltd. ("Senior-China") is a Chinese corporation with its principal place of business in Shenzhen, Guangdong, China. *Id.* ¶ 20. Defendant Shenzhen Senior Technology Material Co. Ltd. (US) Research Institute ("Senior-US") is California corporation which is "registered to do business in the State of California, and has an office and research and development facility in the State of California." *Id.* ¶ 22. Senior-China and Senior-US (collectively, "Senior Entities") allegedly "compete[] with Celgard in the battery separator market" through their development and sale of coated and uncoated separators.[3] *Id.* ¶ 23.

Dr. Steven Zhang "was employed by Celgard from 2005 until 2016." *Id.* ¶ 95. During his employment, he "was part of the R&D department and function" and was an expert in "resins, polymers, membranes, base films, and process and production technology." *Id.* Dr. Zhang resigned from Celgard in October 2016. *Id.* ¶ 100. In 2017, Dr. Zhang joined Senior-China as its Chief Technology Officer. *Id.* ¶¶ 100-02; ECF No. 85-13 ¶ 3. Celgard alleges that "Senior hired Dr. Zhang for the specific purpose of using his knowledge of Celgard's patented technology and trade secrets and confidential information to help Senior develop [] infringing separators and to capitalize on his prior relationship and confidential knowledge about Celgard's customers." ECF No. 95 ¶ 107.

---

electrode during the charging of a battery between electrodes." ECF No. 95 ¶ 6.

[3] Celgard alleges that both Senior-China and Senior-US "are engaged in the business of developing, making, using, importing, offering to sell, and/or selling products, including coated separators and uncoated separators." ECF No. 95 ¶ 23. The Senior Entities claim that Senior-US "has never made, used, sold, offered for sale, or imported any separator; never engaged in business activities related to separators; never employed or had any business contact with Dr. Zhang [whose role is described below]; and never collected revenue." ECF No. 85-4 at 12. Senior-US is in the process of being dissolved. ECF No. 85-11 ¶ 14.

### B. Procedural History

In September 2019, Celgard filed a complaint against Senior-China and Senior-US in the Northern District of California. ECF No. 1. In December 2019, Celgard filed an amended complaint adding several defendants. ECF No. 95. Celgard's operative first amended complaint alleges ten causes of action: (1) infringement of the '520 patent under 35 U.S.C. § 271; (2) infringement of the '867 patent under 35 U.S.C. § 271; (3) misappropriation of trade secrets under 18 U.S.C. § 1836, *et seq.*; (4) misappropriation of trade secrets under California Civil Code § 3426, *et seq.*; (5) unfair competition under California Business and Professions Code § 1720, *et seq.*; (6) inducing breach of contract with Dr. Steven Zhang; (7) intentional interference with prospective economic relations; (8) breach of contract; (9) inducing breach of contract with Farasis Energy USA, Inc., Farasis Energy, Inc., Farasis Energy (Gan Zhou), Inc., and Farasis Energy (Gan Zhou) Co., Ltd. (collectively, "Farasis"); and (10) breach of implied covenant of good faith and fair dealing. *Id.* ¶¶ 143-246.

On November 4, 2019, Celgard filed a motion for temporary restraining order and preliminary injunction. ECF No. 42-2. On November 7, 2019, the Court denied Celgard's motion for temporary restraining and set a briefing schedule for its motion for preliminary injunction. ECF No. 51. The Senior Entities filed their opposition on December 6, 2019, and Celgard filed its reply on January 6, 2020. ECF Nos. 85-4, 147-4. The parties also filed a sur-reply, ECF No. 181-3, a sur-sur-reply, ECF No. 199-4, and several objections to various items of reply evidence, ECF Nos. 170-4, 188-4, 190, 232.[4]

On December 26, 2019, Senior-China filed a motion to dismiss Celgard's first amended complaint for lack of personal jurisdiction. ECF No. 130-3. Celgard filed an opposition on January 9, 2020, and Senior-China replied on January 16, 2020. ECF Nos. 164-4, 174-3. Celgard filed objections to the evidence and arguments in Senior-China's reply, and Senior-China filed a response to Celgard's objections.[5] ECF Nos. 191, 231.

---

[4] The Court granted the parties leave to file these additional briefs. ECF No. 173, 218, 229.

[5] The Court granted Senior-China leave to file a response to Celgard's objections. ECF No. 227.

3

## II. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## III. MOTION TO DISMISS

### A. Legal Standard

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where "the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990)). In such cases, courts "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (internal quotation marks and citations omitted).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Daimler AG*, 571 U.S. at 125; *see also* Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Because the applicable state "statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019) (quoting *Schwarzenegger*, 374 F.3d at 800-01).

The due process inquiry generally "requires that each party 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.

4

310, 316 (1945)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (emphasis in original). General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

"Specific jurisdiction is very different." *Bristol-Myers*, 137 S. Ct. at 1780. In order for the court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Id.* "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citation and quotation marks omitted). "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear,* 564 U.S. at 919.

Federal Circuit law governs the issue of personal jurisdiction concerning patent-related claims. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002); *Columbia Sportswear N. Am., Inc. v. Ventex Co., Ltd.*, No. 3:17-cv-623-SI, 2019 WL 4783105, at *1 (D. Or. Sept. 30, 2019). "The general standards governing personal jurisdiction in the Ninth and Federal Circuits, however, are virtually identical." *Columbia Sportswear*, 2019 WL 4783105, at *1 (citing *Celgard*, at 1377-78; *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348-49 (Fed. Cir. 2003); *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200-01 (Fed. Cir. 2003)).

**B.     Discussion**

Senior-China argues that it "is a Chinese corporation that does not purposefully direct any activity at California." ECF No. 130-3 at 7. Celgard argues that Senior-China is subject to specific jurisdiction within California because it "has agents located in California" and "sells its

5

accused separators to various U.S. separator customers who in turn sell batteries to vehicle manufacturers . . . who sell products, devices, or vehicles with the accused separators to consumers in California."[6] ECF No. 164-4 at 5. As set forth below, these contacts with the forum are insufficient to establish personal jurisdiction.

### 1.      Patent Infringement Claim

To determine whether a court has specific jurisdiction over a defendant, the Federal Circuit applies a three-part test which examines: "(1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012). "The plaintiff bears the burden of affirmatively establishing the first two elements of the due process" analysis. *Celgard*, 792 F.3d at 1378. "If the plaintiff meets its burden, the burden shifts to the defendant to prove that personal jurisdiction is unreasonable. 'The first two factors correspond with the 'minimum contacts' prong' of *International Shoe,* 'and the third factor corresponds with the 'fair play and substantial justice' prong.'" *Id.* (quoting *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1360 (Fed. Cir. 2001).

Celgard argues that Senior-China has sufficient minimum contacts to establish personal jurisdiction in California because it (1) purposefully directs activities at residents of California and (2) uses established distribution channels to avail itself of the California market. ECF No. 164-4 at 11-16.

#### a.      Purposeful Direction Theory

"[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Daimler AG*, 571 U.S. at 135 n.13. "In order to establish jurisdiction under the agency theory, the plaintiff must show that the defendant exercises control over the activities of the third-party." *Celgard*, 792 F.3d at 1379 (citing *Daimler AG*, 571 U.S. at 135 n.13). "Alternatively, a plaintiff may establish personal jurisdiction under an alter ego theory." *Celgard*, 792 F.3d at 1379 (citing *Daimler AG*, 571 U.S. at 135 n.13 (2014)). In *Nuance*

---

[6] Celgard does not argue that the Court has general jurisdiction over Senior-China. *See* ECF No. 95 ¶¶ 38, 40-45; *see generally* ECF No. 164-4.

6

*Communications*, for instance, the Federal Circuit found personal jurisdiction under the alter ego theory where a defendant and its sister company were "commonly owned," the entities were "not transacting at arms-length," and "nearly all the named defendant's profits flow[ed] back to the sister company." *Id.* (citing *Nuance Commc'ns, Inc. v. Abbyy Software House,* 626 F.3d 1222, 1232–33 (Fed. Cir. 2010)).

Celgard argues that Senior-China's "agents located in California—distributor, Targray, and sales agent Sun Town—have sold and offered for sale Senior-China's separators throughout the U.S., including California." ECF No. 164-4 at 5, 7, 8, 12-16. Celgard fails to cite any evidence on the record, however, that shows that Targray or Sun Town operate as Senior-China's agents. *See Celgard*, 792 F.3d at 1379. First, Celgard references a table of Targray "Separator Sales – USA" which lists Senior-China as a vendor for several sales and lists ▓▓▓▓▓▓▓▓▓[7] as a customer for a single purchase in 2015. ECF No. 164-4 at 13; *see* ECF No. 164-5 at 5, 44. Second, Celgard cites a purchase order which appears to include Senior-China products, lists "Sun Town Technology" as a vendor, and does not identify the purchaser.[8] ECF Nos. 165-11, 176-1. Third, Celgard notes that Sun Town, Senior-US, and Dr. Zhang all shared the same business address at some point within the last few years. ECF No. 164-4 at 13-14; *see* ECF Nos. 165-5, 165-6, 165-7.

This evidence shows only that Targray used Senior-China as a vendor and that Sun Town had possession of Senior-China products. It does not demonstrate "any attempt by [Senior-China] to purposefully direct or control the activities" of Targray or Sun Town. *Celgard*, 792 F.3d at 1379. "As such, Celgard has not shown the requisite control for jurisdiction to be premised on the acts of agents."[9] *Id.* at 1380. Moreover, the building address shared by Sun Town, Senior-US,

---

[7] The principal executive office for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* ECF No. 165-3 at 2.

[8] The "Ship To" column is redacted in the purchase order cited in Celgard's opposition. ECF No. 165-11 at 2. The unredacted version of the document lists "Catalyst Power Technologies, Inc." as the purchaser. ECF No. 176-1 at 2.

[9] In its objections to Senior-China's reply brief, Celgard requests that the Court strike Senior-China's "new" arguments regarding its lack of control over Targray and "absence of an agency relationship between Senior-[China] and either Sun Town or Targray." ECF No. 191 at 2-3.

7

and Dr. Zhang is insufficient to establish an alter-ego relationship between Senior-China and Sun Town.[10] *Id.* (rejecting plaintiff's alter-ego argument where there was "no evidence of common control" or "flow of profits" between defendant and the alleged alter-ego).

### b. Stream-of-Commerce Theory

"The precise requirements of the stream-of-commerce theory of jurisdiction remain unsettled." *Celgard*, 792 F.3d at 1381. Neither the Federal Circuit nor the Supreme court "has decided whether stream-of-commerce jurisdiction requires merely placing goods into the stream of commerce with the expectation that they would be purchased in the forum state, or if 'something more' is required, i.e. the purposeful direction of activities toward the forum." *Id.* at 1380-81; *see Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1350 (Fed. Cir. 2016) (declining "to decide which version of the stream-of-commerce theory should apply"). Under the more-stringent formulation of the test, "a 'substantial connection . . . between the defendants and the forum State' must arise out of the activities of the defendants that are 'purposefully directed toward the forum State.'" *Celgard*, 792 F.3d at 1381 (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 112 (1987)). Under the less-stringent foreseeability standard, "due process is satisfied when the defendant places a product into the stream of commerce while being 'aware that the final product is being marketed in the forum State.'" *Id.* (quoting *Asahi,* 480 U.S. at 117 (Brennan J., concurring in part)).

Celgard argues that Senior-China targeted California "through an established channel" by selling separators to Targray, Sun Town, and "various U.S. separator customers who in turn sell

---

Senior-China's arguments are not new. They are a direct response to the arguments in Celgard's opposition. *See* ECF No. 164-4 at 5 ("[I]t is indisputable that Senior has agents located in California—distributor Targray, and sales agent, Sun Town."); *id.* at 7, 8 ("Targray" and "Sun Town" are "Senior-China's agent[s] in California who sold and distributed the accused separators in California."). Accordingly, the Court denies Celgard's requests to strike and file a sur-reply. *See Hill v. England*, No. CVF0586RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005) ("Although the Court may in its discretion allow the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." (internal quotation marks and citation omitted)).

[10] While the FAC alleges that "Sun Town and Global Ventures are 'alter-egos' of Senior-China," Celgard's opposition brief offers no arguments regarding this alleged alter-ego relationship.

8

batteries to vehicle manufacturers." ECF No. 164-4 at 5, 7-11, 14-16. However, Celgard fails to satisfy even the less-stringent formulation of the stream-of-commerce jurisdictional test.

First, Celgard asserts that "Senior-China was distributing the infringing separators in California . . . through at least Targray, which has its principal place of business in California and is registered to do business in California." ECF No. 164-4 at 13. In support, Celgard points to a confidential settlement agreement which (1) lists Targray's principal places of business as "Kirkland, Quebec, Canada" and "Laguna Niguel, California" and (2) includes a table of Targray "Separator Sales" in the "United States." ECF No. 164-5 at 2, 44. This confidential agreement, however, does not show that Senior-China was aware that its accused separators were marketed in California. *See Asahi*, 480 U.S. at 104 (In order for "jurisdiction premised on the placement of a product into the stream of commerce [to be] consistent with the Due Process Clause," a defendant must be "aware that the final product is being marketed in the forum State."). Celgard offers no indication that Senior-China had access to this confidential agreement or any other sources of information which listed Targray's principal place of business as "Laguna Niguel, California."[11] While Targray made one sale to ▮▮▮▮▮▮▮▮ a business with its principal executive office ▮▮▮▮▮▮, this single sale provides no evidence that this transaction involved the accused separators or that Senior-China was aware of the sale. *Id.*; ECF No. ECF No. 165-3 at 2; *see Celgard*, 792 F.3d at 1382 (declining to exercise jurisdiction under a stream-of-commerce theory where "Celgard [had] not provided evidence that [defendant] was aware that its accused separators were marketed in [the forum state].").

Second, Celgard states that "a number of entities through which Senior-China has sold or offered to sell its accused separators in the U.S. (. . . Sun Town, Farasis US, BYD, etc.), including California, are incorporated in California and/or maintain their principal place of business in California." ECF No. 164-4 at 14. The record, however, provides no evidence that Senior-China sold any of its products to Sun Town, Farasis US, or BYD. The "Purchase Order" that Celgard

---

[11] Targray's publicly-available "Office Locations" webpage states that its headquarters is in Kirkland, Quebec, Canada and does not identify any office locations in California. ECF No. 176-5 at 2.

points to lists "Sun Town Technology" as the vendor and does not identify the purchaser.[12] ECF No. 165-11. While the purchase order suggests that Sun Town had possession of Senior-China products, it provides no indication that any transactions occurred between Sun Town and Senior-China. *See* ECF No. 165-11. Moreover, Celgard provides no support for its statements that Senior-China has sold or offered to sell its products to battery manufacturers such as Farasis US, BYD, Contemporary Amperex Technology Co. Ltd., and Saft America Inc. *See* ECF No. 164-4 at 7, 10, 12, 14, 15, 19. Because Celgard provides no support for its allegations that "Senior-China ship[s] accused products into California through established distribution channels," ECF No. 164-4 at 10, the Court declines to exercise jurisdiction under a stream-of-commerce theory.

Celgard cites *M-I Drilling* for the proposition that "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim of patent infringement." ECF No. 164-4 at 15-16 (citing *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1001 (Fed. Cir. 2018)). This case, however, is inapposite. The court in *M-I Drilling* discussed a defendant's direct contacts with the forum. *M-I Drilling*, 890 F.3d at 1001 (finding that "the totality of [defendant's] contacts . . . compels the conclusion that [defendant] purposefully directed its activities" at the forum.). Celgard, by contrast, alleges no direct contacts between Senior-China and Calfornia. *See generally* ECF No. 164-4. Instead, Celgard asserts a stream-of-commerce theory based on Senior-China's alleged placement of products in established distribution channels which lead to California. ECF No. 164-4 at 10, 11, 14-16.

In sum, Celgard "fails at step one of the test for specific jurisdiction" under both its purposeful-direction and steam-of-commerce theories. *See Lil' Man in the Boat, Inc. v. Auk Ta Shaa Discovery, LLC*, No. 16-cv-01471-JST, 2016 WL 6679558, at *3 (N.D. Cal. Nov. 14, 2016) (finding that the court "lacks personal jurisdiction over Defendant because Plaintiff has not satisfied its burden of showing that Defendant purposefully availed itself of the privilege of

---

[12] The "Ship To" column is redacted in the purchase order cited in Celgard's opposition. ECF No. 165-11 at 2. The unredacted version of the document lists "Catalyst Power Technologies, Inc." as the purchaser. ECF No. 176-1 at 2.

conducting activities in California."). Accordingly, the Court lacks personal jurisdiction over Senior-China with respect to Celgard's patent claims.

### 2.     Misappropriation of Trade Secrets Claims

Celgard argues that the Court has specific personal jurisdiction over its Defend Trade Secrets Act ("DTSA") claims under the Ninth's Circuit's three-part purposeful direction test. *See* ECF No. 164-4 at 21. The elements of that test are as follows:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (citing *Sher*, 911 F.2d at 1361. If the plaintiff succeeds in doing so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The Ninth Circuit test is nearly identical to the test applied by the Federal Circuit. *See Columbia Sportswear*, 2019 WL 4783105, at *4 ("In the Federal Circuit, specific personal jurisdiction entails a nearly identical three-part test.").[13]

The first prong of the Ninth Circuit's test for specific personal jurisdiction asks whether the defendant "purposefully direct[ed]" its activities at the forum or "purposefully avail[ed]" itself of the privilege of conducting activities in the forum. *Schwarzenegger*, 374 F.3d at 802. Specific

---

[13] "In the Federal Circuit, the first element does not incorporate the 'purposeful avail[ment]' language of its Ninth Circuit analogue, because the purposeful availment test is . . . generally applied to contract actions. The Federal Circuit, however, has held that purposeful availment still can satisfy the first prong of its analysis." *Columbia Sportswear*, 2019 WL 4783105, at *4 (citing *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1367 (Fed. Cir. 2006)). For the second and third prongs, "the standards under Ninth and Federal Circuit law are identical." *Columbia Sportswear*, 2019 WL 4783105, at *4, 7 (citations omitted).

11

jurisdiction is proper under the "purposeful direction" theory where the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803.

Celgard fails to make a prima facie case of any intentional act expressly aimed at California. First, Celgard alleges that "Senior-China entered into a Distribution Agreement with Targray to sell the accused separators." ECF No. 164-4 at 21. However, Celgard neither argues nor provides evidence that this agreement aimed any accused separators at California. *See* ECF No. 164-4 at 21; ECF No. 164-5 at 44; *see also* ECF No. 191 at 3 ("The agreement is for the distribution of Senior-China's accused products in the U.S."). Accordingly, it does not demonstrate any "intentional act . . . expressly aimed at the forum state." *Schwarzenegger*, 374 F.3d at 802. Second, Celgard references a purchase order which lists "Sun Town Technology" as a vendor. As discussed above, this purchase order provides no evidence that Senior-China "offered the accused separators for sale through . . . Sun Town." ECF No. 164-4 at 21; *see* ECF No. 165-11. Third, Celgard references a public-records report with a California address for Dr. Zhang which is the same as the business address for Sun Town. *See* ECF No. 164-4 at 21; ECF Nos. 165-5, 165-6. This public records report, however, shows no intentional act aimed at California. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."). Because Celgard presents no evidence of purposeful direction, it fails to establish specific personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (Plaintiff "fails at step one of the test for specific jurisdiction.").

### 3. Remaining Claims

"[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Because the Court does not have personal jurisdiction over Senior-China

with respect to Celgard's patent and DTSA claims, the Court is unable to exercise pendent personal jurisdiction over Celgard's remaining claims.[14]

#### 4. Personal Jurisdiction under Rule 4(k)(2)

In a final effort to sustain jurisdiction, Celgard asserts that, "[e]ven if this Court were to determine that Senior-China's contacts in California alone are insufficient to establish personal jurisdiction, personal jurisdiction in California would still be proper under Fed. R. Civ. P. 4(k)(2) based on Senior-China's contacts throughout the U.S." ECF No. 164-4 at 13 (emphasis omitted). Federal Rule of Civil Procedure 4(k)(2) permits federal courts to exercise personal jurisdiction if "'the defendant is not subject to jurisdiction in any state's courts of general jurisdiction' and 'exercising jurisdiction is consistent with the United States Constitution and laws.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017) (quoting Fed. R. Civ. P. 4(k)(2)). Where an international defendant has insufficient contacts with a particular state to warrant jurisdiction, Rule 4(k)(2) provides a basis for establishing jurisdiction if "the United States serves as the relevant forum for a minimum contacts analysis." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citation omitted).

Plaintiffs must prove three elements to invoke Rule 4(k)(2). "First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Id.* at 1159 (citations omitted). "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 462 (9th Cir. 2007) (citing *Pebble Beach Co.,* 453 F.3d at 1159).

---

[14] While Celgard "does not concede that there are no independent bases for personal jurisdiction with respect to its non-patent, non-DTSA claims," ECF No. 164-4 at 22 n.14, Celgard fails to provide any evidence or arguments regarding independent bases for jurisdiction. Accordingly, the Court finds that it lacks personal jurisdiction over Senior-China with respect to Celgard's remaining claims. *Boschetto*, 539 F.3d at 1015 ("In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper.").

13

The Ninth Circuit has urged district courts to be "cautious" in applying Rule 4(k)(2). *Ayla, LLC v. Alya Skin Pty. Ltd.*, No. 19-cv-00679-HSG, 2019 WL 5963149, at *6 (N.D. Cal. Nov. 13, 2019) (citing *Holland Am. Line*, 485 F.3d at 462 (noting that the Ninth Circuit has never countenanced jurisdiction under Rule 4(k)(2) and that the "few cases in which [ ] sister circuits have concluded that Rule 4(k)(2) conferred jurisdiction have involved defendants with much more extensive contacts to this country.")); *see also Pebble Beach*, 453 F.3d at 1154 ("Rule 4(k)(2) may, in limited circumstances, be a basis for establishing jurisdiction. . .").

Celgard's only effort to establish jurisdiction under Rule 4(k)(2) is to observe pithily in a footnote that "[e]ven if this Court were to determine that Senior-China's contacts in California alone are insufficient to establish personal jurisdiction, personal jurisdiction in California would still be proper under Fed. R. Civ. P. 4(k)(2) based on Senior-China's contacts throughout the U.S." ECF No. 164-4 at 13 n.10 (emphasis omitted). For this argument to be persuasive, Celgard would need to offer evidence that Senior-China's contacts with the United States as a whole were more significant than those with just California. *See Holland*, 485 F.3d at 462. It does not even attempt to meet this burden.[15] Because Celgard has not met its burden, the Court declines to exercise personal jurisdiction under Rule 4(k)(2).

### 5. Jurisdictional Discovery

Celgard requests leave to conduct jurisdictional discovery. ECF No. 164-4 at 23-24. The decision whether to grant jurisdictional discovery is typically within the discretion of the district court. *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). "[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *American West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989). However, "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach*, 453 F.3d at 1160 (9th Cir. 2006) (quoting

---

[15] The Court will not consider the new and untimely arguments raised in Celgard's objections to Senior-China's reply and Celgard's opposition to Senior-China's administrative motion for leave to file response to Celgard's objections to Senior-China's reply. *See* ECF Nos. 191, 221.

14

*Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995)). In its request for jurisdictional discovery, Celgard argues that "there are multiple defendants that are connected to Senior-China and that are relevant to personal jurisdiction" and asserts that "good cause exists to conduct discovery to determine the full scope of Senior-China's contacts with the United States and particularly in California." ECF No. 164-4 at 24. The Court finds that these "purely speculative allegations of attenuated jurisdictional contacts" are insufficient to warrant jurisdictional discovery and, therefore, denies Celgard's request. *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011).

## IV. MOTION FOR PRELIMINARY INJUNCTION

### A. Legal Standard

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). As to the first factor, a plaintiff is "not required to prove their claim, but only must show that they [are] likely to succeed on the merits." *Glossip v. Gross*, 135 S.Ct. 2726, 2792 (2015). Courts use different formulations to describe this factor, including "reasonable probability," "fair prospect," "substantial case on the merits," and "serious legal questions . . . raised." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012); *Halcyon Horizons, Inc. v. Delphi Behavioral Health Group, LLC*, No. 17-cv-00756-JST, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017). "These formulations are largely interchangeable and indicate that, at a minimum, a petitioner must show that there is a substantial case for relief on the merits." *Halcyon Horizons*, 2017 WL 1956997, at *3 (internal quotation marks omitted); *Lair v. Bullock*, 697 F.3d at 1204.

15

**B.     Discussion**

Celgard moves for a preliminary injunction prohibiting Senior-China and Senior-US from "using Celgard's trade secrets and confidential information in any way, from making, using, offering to sell, selling, or importing separators that infringe the '520 and '867 patents, and from disrupting Celgard's business and inducing Dr. Steven Zhang's further breach." ECF No. 42-4 at 2, 9.

**1.     Senior-China**

"A district court must have personal jurisdiction over a party before it can enjoin its actions." *Ins. Co. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 711 n.1 (1982) (Powell J., concurring); *see Zepeda v. U.S.I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim."); *Al-Hizbullahi v. Bleisner*, No. C 04-4903 MMC (PR), 2008 WL 5054967, at *2 (N.D. Cal. Nov. 24, 2008) ("A court must have personal jurisdiction over the parties to be enjoined."). Because Celgard has not met its burden of establishing personal jurisdiction over Senior-China, *see supra*, the Court denies Celgard's motion for preliminary injunction with respect to this defendant. *See Lithium Techs., Inc. v. Thompson*, No. 13-CV-3244-YGR, 2013 WL 12122666, at *1 ("The Court must exercise personal jurisdiction over Defendant to enjoin him; and Plaintiff bears the burden of establishing that the Court has personal jurisdiction over Defendant.).

**2.     Senior-US**

The Senior Entities argue that Celgard is unlikely to succeed on the merits of its claims against Senior-US because it "has never made, used, sold, offered for sale, or imported any separator; never engaged in business activities related to separators; never employed or had any business contact with Dr. Zhang; and never collected revenue." ECF No. 85-4 at 12 n.2; ECF No. 85-11 ¶¶ 17-37). Celgard does not dispute Senior-US's lack of involvement in the separator industry. *See Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond amounts to a concession."). Instead, Celgard argues

16

that the company is relevant to its allegations because "Senior-US has been funneling hundreds of thousands of dollars to Sun Town and Global Venture, now named defendants in this suit" and "has been conducting its operations through these entities." ECF No. 147-4 at 11 n.8 (citing ECF No. 147-22). However, Senior-US's purported involvement with Sun Town Technology and Global Venture Development, LLC is irrelevant.

The sole basis for Celgard's claims against Sun Town and Global Venture is the allegation that these defendants are "alter egos" of Senior-China. *See* ECF No. 95 at ¶¶ 20, 21, 26, 30, 133-142. Celgard provides no support for these allegations. Therefore, Celgard falls well below its burden to show "a substantial case on the merits" with respect to its allegations against Senior-US and its alleged affiliates. *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012); *see Halcyon Horizons*, 2017 WL 1956997, at *3 ("[A]t a minimum, a petitioner must show that there is a substantial case for relief on the merits." (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, the Court grants Senior-China's motion to dismiss and denies Celgard's motion for preliminary injunction. Any amended complaint must be filed within 21 days of the issuance of this order.

**IT IS SO ORDERED.**

Dated: February 10, 2020

_____
JON S. TIGAR
United States District Judge

17